## Goodrich *v.* Foster.

The defendant, acting under an invalid appointment as constable, attached property upon writs against the plaintiff, which afterwards, being legally qualified, he sold in legal form. The debtor afterwards consented in writing that the proceeds should be applied to satisfy the just claims of the attaching creditors, and the defendant subsequently applied the same upon executions recovered in the actions.—*Held*, that the agreement was a justification of the defendant's subsequent acts, but was not a release of damages for the unjustifiable taking; that the prior sale under the official appointment was well; that the application of the money upon the executions was pursuant to the license; and that in an action of trespass the plaintiff could recover damages only for the taking and detention of the goods; they having been, with his consent, appropriated to his use.

It *seems* that the insufficiency of the return, or the entire omission of a return, does not render the act of an officer a trespass.

Trespass, *de bonis.* The writ was dated on the 1st day of March, 1847. The plea was the general issue, accompanied by a brief statement, by which the defendant justified the taking, as a constable of Walpole, having sundry writs of attachment against the plaintiff.

The chattels were taken on the 11th day of September, 1846, and a few of them were by law exempt from attachment. The defendant introduced a paper, purporting to

be an appointment of himself to the office of constable of Walpole, by the selectmen of that town. But it bore the signature of one only of the board. It was dated on the 30th of May, 1846. He also introduced a like paper, dated on the 30th of September, 1846, which was signed by all of the selectmen. He also proved that he gave the bonds required by law to be given by constables, to the town and to the county, on the 29th day of September. It also appeared that at the annual meeting in March, 1847, the defendant was elected a constable of Walpole, and on the 13th and 15th days of that month gave bonds to the town and county, as required by law. The defendant then produced sundry writs against the plaintiff, all of which were served by him, and the property in controversy attached, prior to the 29th of September, all of which except one were returnable to the Court of Common Pleas, and on one of them the property was, on application of the creditor, sold in October, 1846. He also introduced three other writs against the plaintiff, which were served by the defendant in October and November, and the same property was returned as attached on them, subject to the prior attachments that have been named. In all these actions judgments were rendered; and executions issued against the present plaintiff were committed to this defendant, who applied the proceeds of the property that he had sold, in satisfaction of them, in the order of the attachments. These executions were not received by him until after his election and qualification in March, 1847. The defendant also introduced a paper without date, but proved to have been delivered to him on the 21st day of November, 1846, signed by the plaintiff, whereby he agreed to relinquish, and did relinquish, all his right, title and interest in any and all property attached by Foster, and consented that the same be sold and the proceeds applied towards the payment of the just claims of the attaching creditors; the sale to be in the way provided by law

Goodrich *v.* Foster.

for such sales; one and a half tons of hay to be excepted. To this paper the plaintiff objected—the want of consideration, and that it did not sustain the defendant's case, and that it was uncertain and void. The return upon the writ on which the property was sold, the writ of Crosby, stated that the application for sale was made by the debtor; but the officer had leave to amend and insert "creditor" for "debtor," to which the plaintiff excepted. One of the writs under which the defendant justified was returnable to a justice of the peace, and property to the amount of $10.44 was separately attached, and in October, 1846, sold and applied to satisfy the judgment obtained.

A verdict was taken for the plaintiff, by consent, for $334.59, the value of all the property attached; on which judgment is to be rendered, or the verdict is to be reduced to $2.99, the value of the property exempt from attachment; or the verdict is otherwise to be amended; or it is to be set aside and judgment entered for the defendant, as the court may order.

*Wheeler*, for the plaintiff, cited *Otis* v. *Jones*, 2 Wend. 394; *Palmer* v. *Willey*, 17 Wend. 91; *Higgins* v. *Whitney*, 24 Wend. 379; *Thorney* v. *Schuyler*, 2 Hill 204.

*Lane*, for the defendant, cited 8 N. H. 536; 13 Mass. 304; *Blake* v. *Johnson*, 1 N. H. 91; *Cavis* v. *Robertson*, 9 N. H. 528.

WILCOX, J. The property was taken on the 11th of September, 1846. The defendant was appointed a constable on the 30th of May preceding; but his appointment was signed by one only of the selectmen, although it purports to be signed by two, and no bond appears to have been given. He was, therefore, not qualified to perform any duty of his office. He was reappointed on the 30th day of September, 1846, and gave bonds pursuant

to law to the town and to the county. In March, 1847, the defendant was duly elected a constable, took the oath of office, and gave bonds pursuant to law. This was subsequent to the commencement of this suit.

The defendant introduced sundry writs against the plaintiff which had been placed in his hands for service, and upon which he made attachments of the plaintiff's goods prior to the 30th of September, 1846; all of which writs, but one, were returnable to the court of common pleas. Upon one of these writs, returnable to the Court of Common Pleas, there was a sale of property, at the application of the creditor, in October; and upon the writ not returnable to the Court of Common Pleas there was a separate attachment of property in September, prior to the time of the second appointment to office, and an application of the proceeds to the amount of $10.44 in payment of the judgment obtained. This was also in October.

After the defendant's second appointment, he received other writs, and attached the same property subject to the first attachments. After his election in March, 1847, the executions came into his hands, and, having previously sold the property, he applied the avails upon the executions in the order of the attachments.

On the 21st day of November the plaintiff signed an agreement, consenting that all the property attached by the defendant as constable should be sold, and the proceeds applied towards the payment of the debts, one and a half tons of hay excepted; and this is a bar to any action for anything done under such license, whether the defendant was a constable or not.

This shows an application of the property to the plaintiff's use, with his consent; and if the plaintiff had taken the property unlawfully, he is answerable only for the damage resulting from the taking and detaining until the license. This covers all the property, including that

Goodrich *v.* Foster.

which was exempt from attachment, except the ton and a half of hay. The plaintiff, therefore, can recover damages only for the detention of the property. He has had the benefit of it. It is the same thing in effect as if he had received back the property in specie from the defendant, and then brought his action, which of course would not entitle him to any further damages than he had sustained by the detention.

It is doubtful whether the defendant's omission to make a sufficient return, or to make any return at all, renders his acts illegal and himself a trespasser *ab initio;* provided his acts were such as would have been legal if sufficiently returned. *Parker* v. *Pattee,* 4 N. H. 530; *Smith* v. *Moore,* Grafton, 1845; *Young* v. *Rand,* Strafford, July, 1847. But the difficulty may be removed by an amendment of the return, if thought necessary.

The original taking of the property, prior to the 30th of September, 1846, by writs returnable to the Court of Common Pleas, is not justified; nor does the agreement of the plaintiff, made on the 21st of November, extend or propose to extend so far as to discharge any claim which the plaintiff had for that injury. It is not a release; it does not purport to be one; it was not under seal, and was without consideration. It is, therefore, as a reception of the property taken would have been, wholly inoperative as a justification of the taking, or a satisfaction for the unjustifiable act. But for the subsequent acts of appropriating the avails of the sales in the manner in which that act was executed by the defendant, the agreement affords a perfect justification.

In that sale of the property and application of its avails, he acted, also, under the protection of a valid appointment to the office of constable, and qualification according to law. While he held the money as constable, or under the license, the executions having been delivered to him, he proceeded under them, and in so doing appears to have

pursued the license also; which was, to sell and apply the proceeds to the payment of the just claims of the attaching creditors. Judgments obtained in the actions in which the attachments referred to were made, were safe and proper indications to the defendant in executing the fiduciary terms of the license, as to what claims were just. In either capacity, whether of an officer or of a trustee of the plaintiff's appointment, the defendant appears to have been justified in the disposition of the money.

The sale of the property upon the writ, in October, seems also to have been well. At that time the defendant was an officer *de jure*, and the property being in his hands, the attachment became valid by the events which consummated his official appointment and qualification. If, however, it were otherwise, the license appears to have been pursued by him in good faith, and the property was, by the consent of the plaintiff, applied to his use.

The defendant is liable only for the detention of the property. The verdict cannot be so amended as to meet this view of the case, and must, therefore, be set aside and a

*New trial granted.*